# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

VISAGE SPA, LLC,

                Plaintiff,                          Case Number: 06-10756

v.                                        JUDGE PAUL D. BORMAN
                                                  UNITED STATES DISTRICT COURT

SALON VISAGE, INC, SPA VISAGE, L.L.C.,
and STEVEN J. SMITH,

                Defendants.
_____ /

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)/FED. R. CIV. P. 56

       Presently before the Court is Defendant Salon Visage, Inc. ("Defendant Salon"), Spa

Visage, LLC ("Defendant Spa"), and Steven J. Smith, M.D.'s ("Dr. Smith") (collectively

"Defendants") Motion to Dismiss for Lack of Personal Jurisdiction.  In this action, Plaintiff

Visage Spa, LLC ("Plaintiff") brought a three count Complaint[1] against Defendants based upon

an alleged infringement of its trademark registration.

       Plaintiff is a Michigan limited liability company with its principal place of business in

Michigan.  (Compl. ¶ 1).   Defendant Salon, a Tennessee corporation, is a salon that performs

hair care and other beauty services in Knoxville, Tennessee.  Defendant Spa, a Tennessee limited

liability company, is a full-service day spa also located in Knoxville, Tennessee.  (Compl. ¶¶ 2,

3).  Tennessee is the principal place of business for both Defendants Salon and Spa.  (*Id.*).  Dr.

---

[1]      Count I:       Trademark Infringement
              Count II:     Dilution of Trademark
              Count III:    Unfair Competition

Smith is a Knoxville, Tennessee physician who performs cosmetic services at Parkwest Plastic Surgery, PLLC.

Defendants filed the present Motion to Dismiss on April 10, 2006, arguing that they are not subject to the *in personam* jurisdiction of this Court with regard to Plaintiff's claims of trademark infringement. On May 5, 2006, Plaintiff filed its response in opposition, and Defendants subsequently filed their reply.

## I.   FACTS

This controversy revolves around Defendants' alleged infringing use of Plaintiff's "Visage Spa" mark (the "Mark") (U.S. Registration No. 2,819,233). Plaintiff claims that the "Visage Spa" mark is confusingly similar to the "Spa Visage" name used on Defendants' websites. (Compl. ¶¶ 18-19). Defendant Salon and Defendant Spa maintain websites at www.salonvisage.com and www.spavisage.com, respectively. The Mark can be viewed on the homepage of both sites. Each website provides information to websurfers regarding the services offered by Defendant Salon and Defendant Spa. The websites provide websurfers the option of purchasing gift certificates online to Defendant Salon and Defendant Spa.[2] (Defs.' Br. 5). The gift certificates may only be used at Defendant Salon and Spa, located in Knoxville, Tennessee. In addition, Defendant Salon and Defendant Spa have reciprocal links on their websites which lead a websurfer to the other company's website. (Pl.'s Resp. 3). Reservations cannot be made

---

[2] It should be noted that Plaintiff does not claim that Defendant Salon sells gift certificates to Defendant Spa on its website. It appears that only gift certificates to Defendant Salon can be purchased on Defendant Salon's website, and those gift certificates are not redeemable at Defendant Spa's location. This is reinforced by the fact that Defendant Spa's website offers separate gift certificates for Defendant Salon and Defendant Spa. (*See* Pl.'s Br. Ex. 10-18, Defendant Spa Webpages).

online, but Defendant Spa's website indicates that the ability to do so at Defendant Spa is

"coming soon."  (Pl.'s Br. Ex. 20, Defendant Spa "FYI" Webpage).

The Mark is also used on the website of  Parkwest Plastic Surgery, PLLC ("Parkwest")

located in Knoxville, Tennessee, where Dr. Smith is employed as a licensed physician offering.

(Pl.'s Resp. 4).  Parkwest's website states:

> As a service to *Spa Visage* clients and as a convenience of patients of Parkwest
> Plastic Surgery, cosmetic consultations with Dr. Smith are available by
> appointment at *Spa Visage* . . . .
>
> Dr. Smith and the staff of Parkwest Plastic Surgery work closely with the skin
> care services staff at *Spa Visage* to ensure that Parkwest Plastic Surgery patients
> have these outstanding services readily available to them. Services provided by
> *Spa Visage* staff for our patients include skin care consultations and a variety of
> facials designed to enhance and compliment the plastic surgery experience.

(Pl.'s Resp. Ex. 24) (emphasis added).  The Defendant Spa and Parkwest websites also have

reciprocal links to their webpages.  In reference to Dr. Smith, Defendant Spa's website provides:

> If your needs are beyond the scope of our beauty services or you're looking for a
> little something extra, Dr. Steven J. Smith, M.D., FAS, a Board Certified
> Cosmetic Surgeon sees patients at the spa for consultations and minor procedures.
> For more information about Dr. Steven J. Smith, please visit:
> www.parkwestplasticsurgery.com.

(Pl.'s Resp. Ex. 23).  Defendant Spa and Defendant Salon allege that they have been using the

Mark since September 2000.  (Defs.' Br. Ex. A, Gambuzza Aff. ¶ 9).  "Visage Spa" was

registered to Plaintiff as of March 2, 2004.  The Mark's first use, as stated on its U.S.

Registration was January 1, 2001.  Michigan Service Mark registration notes a first use date "in

commerce anywhere" and "in commerce in Michigan" as of September 1, 2000.  (Pl.'s Resp. Ex.

2).  However, Plaintiff contends in its pleading that its first use was on July 12, 2000.  (Pl.'s

Resp. Ex. 1, Freedland Aff. ¶ 10).

3

Defendants argue that their only business activity that was related to Michigan was a single gift certificate sale from Defendant Spa's website to a Michigan resident. Defendants contend that they did not initiate the sale, have not advertised in Michigan, have no employees or agents in the state, have not sent a sales agent to Michigan, nor have offices or property in Michigan. Defendants aver that one sale to a Michigan resident is not purposeful availment unless the defendant specifically targeted that resident. Defendants claim that Plaintiff has not alleged that Defendant Spa's site is interactive in its Complaint, and that even if Plaintiff had made this allegation, Defendant Spa's site is on the passive end of the *Zippo* "sliding scale." *See Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119 (W.D. Pa. 1997).

Defendants also argue that the alleged cause of action does not arise from Defendant Spa's actions in Michigan. Defendants believe that the Mark was never used in Michigan and Defendants Salon and Spa only promote their services and goods under the Mark and the "Salon Visage" mark in Tennessee. Defendants also assert that their actions do not have a substantial enough connection to make the assertion of personal jurisdiction reasonable. Defendants contend that the gift certificate could only be redeemed for services in Knoxville, Tennessee.

Plaintiff argues that a single business transaction with a Michigan resident does provide a basis for personal jurisdiction under Michigan's long-arm statute, Mich. Comp. Law § 600.715. Plaintiff also argues that a contract, represented by the gift certificate, was entered into with a Michigan resident while the resident was in Michigan, and created contractual rights for that Michigan resident. Thus, Plaintiff claims that the sale provides a basis for jurisdiction under Michigan's Long-Arm statute. Plaintiff relies on this Court's opinion in *Audi AG v. D'Amato*, 341 F. Supp.2d 734 (E.D. Mich. 2004), to support its assertion that Defendants' minimum

4

contacts comply with Due Process.  Plaintiff asserts that purposeful availment is demonstrated

by Defendants' web-based activity directed at Michigan and because it felt the effects in

Michigan from Defendants' infringement activity.

## III.    ANALYSIS

### A.    Standard of Review

A complaint brought under Federal Rule of Civil Procedure 12(b)(6) should not be

dismissed for failure to state a claim, "unless it appears beyond doubt, even when the complaint

is liberally construed, that the plaintiff can prove no set of facts which would entitle him to

relief."  *Hoover v. Ronwin*, 456 U.S. 558, 587, 104 S. Ct. 1989; 80 L. Ed. 2d 590 (1984). For

purposes of a motion to dismiss, the pleadings and affidavits are viewed "in a light most

favorable to the Plaintiff."  *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003).

All factual allegations and any inferences derived from those allegations must be accepted as

true. *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  "If, on a [motion

to dismiss] . . . , matters outside the pleading are presented to and not excluded by the court, the

motion shall be treated as one for summary judgement and disposed of as provided in Rule 56,

and all parties shall be given reasonable opportunity to represent all material made pertinent to

such a motion by Rule 56."  FED. R. CIV. P 12(b).

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim,

counterclaim, or cross-claim is asserted may "at any time, move with or without supporting

affidavits, for a summary judgment in the party's favor as to all or any part thereof."  FED. R.

CIV. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there

is no genuine issue of material fact as to the existence of an essential element of the nonmoving

party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in

6

Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e).  The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact."  *Id.* (citations omitted).  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

"[T]he showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss." *Id*.  "The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint."  *Id.* (citations omitted); *see* FED. R. CIV. P. 56(e) (requiring the "nonmoving party to go beyond the pleadings.").  Because Defendant relies upon evidence not included in the pleadings, the Court treats Defendant's motion as a motion for summary judgment.

**B.    Discussion**

The Sixth Circuit created a two-step process to determine whether a federal district court can exercise personal jurisdiction over a defendant in a diversity case.  *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).   The first step is to determine "whether the law of the state in which the district court sits authorizes jurisdiction."   *Id.*  The second step is to decide "whether the exercise of jurisdiction comports with the due process clause."   *Id*; *see CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

### 1.    Michigan's Long-Arm Statute

The Court must look to the Michigan Long-Arm statute to determine whether personal

jurisdiction exists.  MCL § 600.715.   Section 600.715 provides:

> The existence of any of the following relationships between an individual or his
> agent and the State shall constitute a sufficient basis of jurisdiction to enable a
> Court of record of this State to exercise limited personal jurisdiction over the
> individual and to enable the Court to render personal judgments against the
> individual or his representative arising out of an act which creates any of the
> following relationships:
>
>> (1) The transaction of any business within the State.
>> (2) The doing or causing any act to be done, or consequences to occur, in the
>> state, resulting in an action for tort.
>> (3) The ownership, use, or possession of any real or tangible personal property
>> situated within the state.
>> (4) Contracting to insure any person, property, or risk located within this state at
>> the time of contracting.
>> (5) Entering into a contract for services to be performed or for materials to be
>> furnished in the state by the defendant.

The Sixth Circuit has held that "[t]he 'transaction of any business' necessary for limited personal

jurisdiction under § 600.715(1) is established by 'the slightest act of business in Michigan.'"

*Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 888 (6th Cir. 2002).   Additionally,

"[u]nder Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by

federal constitutional due process requirements and thus, the two questions become one."  *Mich.*

*Coalition of Radioactive Material Users, Inc. v. Greipentrog*, 954 F.2d 1174, 1176 (6th Cir.

1992); *Audi AG*, 341 F. Supp. 2d at 741("The Michigan Supreme Court has construed

Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction

consistent with due process.").  The test for personal jurisdiction is whether "the defendant's

conduct and connection with the forum state are such that he should reasonably anticipate being

haled into court [in that state]."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

8

(1980).

### 2.    Due Process

According to the U.S. Supreme Court in *International Shoe v. Washington*, 326 U.S. 310, 316 (1954), due process requires that the defendant establish "certain minimum contacts [so that the exercise of personal jurisdiction] does not offend traditional notions of fair play and substantial justice." Based on the above principles of due process, the Sixth Circuit in *Southern Machine v. Mohasco Industries*, 401 F.2d 374 (6th Cir. 1968), created a three-part test to determine whether personal jurisdiction was consistent with due process requirements.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine*, 401 F.2d at 381.

### a.    Purposeful Availment

The defendant must do some act whereby it purposefully avails itself of the privilege of doing business in Michigan. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). There must be a substantial connection between the defendant's conduct and the state such that the defendant "should reasonably anticipate being hauled into court there." *Id*. at 474. The purposeful availment requirement protects the defendant from being subject to a court's jurisdiction as a result of "random, fortuitous, or attenuated contacts." *Id*. at 475. "'Purposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities."

9

*Sports Auth. Mich*., 97 F. Supp. 2d at 811.

i. Interactivity of Defendant's Website

In the internet context, the interactivity of the website determines whether personal jurisdiction is appropriate for an out-of-state defendant. *Cybersell, Inc., v. Cybersell, Inc.*, 130 F.3d 414, 418-19 (9th Cir. 1997). There are three categories of interactivity for a website.[3] *See, e.g., Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119 (W.D. Pa. 1997). The first category is a highly interactive website, which gives others the ability to download and enter into contracts.[4] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996). This category is sufficient for a Court to exercise personal jurisdiction. *Id.* The second category is "a middle ground where information can be exchanged between the viewer and the host computer. In such a case, the court examines the level of interactivity and the commercial nature of the exchange of the information." *Zippo*, 952 F. Supp. at 1124; *see Citigroup Inc., v. City Holding Co.*, 97 F. Supp. 2d 549, 564-65 (S.D. N.Y. 2000). The last category is where the defendant makes information available on an otherwise passive website. *Id.* A "passive website is insufficient to establish purposeful availment for the purpose of due process." *McGill v. Gourmet Technologies, Inc*., 300 F. Supp. 2d 501 (E.D. Mich. 2004).

Defendants argue that Defendant Spa's website is passive because the only activity which relates to Michigan is a single gift certificate sale to a Michigan resident, and this does not

---

[3] The three categories of interactivity are commonly referred to as the *Zippo* "sliding scale."

[4] An example of a highly interactive website is one where the "defendant clearly does business over the Internet [by] enter[ing] into contracts with residents of a foreign jurisdiction [through] knowing and repeated transmission of computer files over the Internet. *Zippo*, 952 F. Supp. at 1124.

amount to a continuing relationship and obligation in the state.  Defendants claim that: (1) the gift certificate cannot be used in Michigan; (2) they never advertised in Michigan; (3) they did not initiate the sale; (4) have no employees or agents working in Michigan; (5) no sales agents were sent to Michigan; and (6) they own no property in Michigan and have no offices in Michigan.

Plaintiff counters that because Defendants maintain a highly interactive website accessible in Michigan, which contains the alleged infringing mark, the Court may assert jurisdiction over Defendants.  Plaintiff alleges that Defendants' website is highly interactive because it offers to sell gift cards, as well as other products.  (Pl.'s Resp. 7).  Plaintiff argues that following the Court's ruling in *Audi AG*, the websites meet the elements necessary for purposeful availment.  (*Id*. at 11).  Plaintiff claims that the websites are sufficiently interactive because they offer to sell goods, and the goods sold on the websites allegedly infringe upon Plaintiff's trademark because they are sold under the Mark.  (*Id*.).  Plaintiff also asserts that the websites' present ability to take online reservations is not determinative in the jurisdictional analysis.

The Court initially finds that Defendant Spa's website (the "website") is neither passive nor highly interactive.  Because gift certificates may be purchased through the website, the site does more than passively advertise Defendants' services.  However, only gift certificates – which resembles money in that the gift certificates are redeemable for future services – can be purchased.[5]  There are no other items available for purchase on the websites, nor is there anything to download.  Therefore, the Court finds that Defendant Spa's website is not highly interactive, and that it falls in the "middle ground," where the Court must examine the level of

---

[5] The Court could not find "products" offered for sale on the webpage.

interactivity and the commercial nature of the information exchanged.

It is also important to note that in its Response, Plaintiff only contends that Defendant Spa's website is sufficiently interactive to meet the purposeful availment requirements. Plaintiff does not allege that Co-Defendant Salon sold gift certificates to Michigan residents. Additionally, Defendant Salon's webpage does not sell gift certificates to Defendant Spa, but only displays the Mark as a weblink to Defendant Spa's website. This passive display of the Mark is insufficient to establish purposeful availment for the purpose of due process. Thus, the Court finds that it does not have personal jurisdiction over Co-Defendant Salon. Accordingly, the Court holds that Plaintiff has not met its *prima facie* burden of demonstrating that Defendant Salon has purposefully availed itself of the privileges of conducting business in this jurisdiction.

In support of its argument against Defendant Spa, Plaintiff attempts to analogize this case to *Audi AG v. D'Amato*, *supra*. In *Audi AG*, the defendant sold goods containing an infringing mark over the internet. This Court found that the defendant transacted business under Michigan's long-arm statute, even though the plaintiffs could not point to a Michigan transaction.[6] 341 F. Supp. 2d at 744. More specifically, this Court held that the website did more than advertise on the internet because Michigan residents could purchase services and products online, thus creating a *prima facie* case of purposeful availment.[7] *Id*.

Defendants cite *Hlavac v. DGG Properties*, Case No. 04-6112, 2005 WL 839158 (E.D.

---

[6] The defendant in *Audi AG* offered to sell email subscriptions and advertising space on its website. *Id*. Additionally, the website also sold clothes and hats. *Id*.

[7] *See also Sports Auth. Mich.*, 97 F. Supp. at 814 ("[The defendant's] web site allows users to purchase products on-line. This tips the balance in favor of exerting personal jurisdiction over [the defendant].").

Pa. Apr. 8, 2005) (unpublished) to support their contention that the Court lacks jurisdiction.  The

court in *Hlavac* discussed the *Zippo* "sliding scale" levels of website interactivity to assess

general personal jurisdiction.[8]  In *Hlavac*, the defendants operated a resort and spa.  Visitors

could purchase gift certificates to the resort though a website, but could not book rooms online.

However, an email link on the website allowed online customers who wanted to make

reservations to contact the defendants.  The court found that:

> [U]nlike truly interactive travel websites where customers can make hotel
> reservations by entering their personal preferences and clicking an online link,
> defendants' email link does not permit visitors to transact business online. . . .
> This is no different than providing a reservation phone number for prospective
> visitors. . . . Although [the ability for customers to purchase gift certificates
> through defendants' website] is interactive, it is insufficient to justify general
> jurisdiction because the sale of gift certificates is not central to defendants'
> business.

*Id*. at *5.  Further, the court surmised that it "cannot conclude that defendants are subject to a

suit in any forum where their [web]site is accessible solely because the [web]site offers gift

certificates for sale."[9]  *Id*.

Despite the parties' contentions, there is no case law on point.  Both cases cited by the

parties can be distinguished from the case at bar.  In *Audi AG*, the goods offered to be sold on the

website carried the infringing mark, whereas here, only the website carries the Mark.  *Hlavac*,

while similar to the instant case, uses the *Zippo* "sliding scale" in a general jurisdiction analysis

---

[8] "Although the *Zippo* court only considered specific personal jurisdiction, a number of
courts in this and other circuits have used the [same] *Zippo* approach to assess general personal
jurisdiction."  *Id*. at *5 n.5.

[9] Specific personal jurisdiction was not found because the plaintiffs' limited use of
defendants' site was insufficient for to subject the defendants to personal jurisdiction;  the
plaintiffs did not use the email link or purchased gift certificates though defendants' website.  *Id*.
at *8.

13

where the transaction or occurrence occurred in Connecticut, not the forum state of Pennsylvania.   Further, *Hlavac* is a personal injury case, not a trademark infringement case.

Defendant Spa's internet websites can constitute purposeful availment "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp.*, 282 F.3d at 890.  Here, Defendant Spa is located in Knoxville, Tennessee. Though Defendant Spa argues that the Visage Spa website is passive, the Court finds that Defendant Spa had the manifest intent of targeting Michigan residents.

First, the Court presumes  that Defendant Spa also sent the gift certificates to the Michigan addresses.   If Defendant Spa was not intending for residents of Michigan to purchase gift certificates from its website, then it would have limited its sales to states other than Michigan, or simply refused to sell to anyone located in Michigan.  This could have been easily accomplished by a message posted on Defendant Spa's website where it sells its gift certificates stating that its sales are limited to Tennessee residents, or by refusing to offer "Michigan" as a state that can be placed in the billing address page when placing an order.  The information exchanged over the internet during the purchase of Defendant Spa's gift certificates was sufficient for Defendants to reasonably anticipate being haled into court in this state.  Indeed, while Defendants argue that "goods" or "products" cannot be purchased on Defendant Spa's website, Defendant Spa makes money when the gift certificates are purchased, not when the services are rendered; the sale is made regardless of whether the gift certificate is ever redeemed. Accordingly, the Court finds that Plaintiff has met its *prima facie* burden of demonstrating that Defendant Spa has purposefully availed itself of the privileges of conducting business in this jurisdiction.

14

ii.      Effects Test

"For the 'effects doctrine' to apply, the Plaintiff must demonstrate that the brunt injury was felt in Michigan, the use of the Plaintiff's trademarks was intentional or deliberate[,] and that the Defendant's acts were expressly aimed at the State of Michigan."  *Audi AG*, 341 F. Supp. 2d at 746.

> In cases where the 'effects doctrine' allows for personal jurisdiction, the defendant specifically targeted the plaintiff with an intentional tort.  In the internet context, 'simply registering someone else's trademark as a domain name and posting a website on the internet is not sufficient to subject a party domiciled in one state to jurisdiction in another.  For the 'effects doctrine' to apply, there needs to be 'something more' to demonstrate that the defendant directed his activity toward the forum state.

*Id*.

Plaintiff claims that the brunt of the injury caused by Defendants' use of the Mark was felt in Michigan because Plaintiff, the owner of the Mark, is in Michigan.  Plaintiff argues that Defendants use of the Mark was intentional and similar because Defendants were notified by the United States Patent and Trademark Office that the "Spa Visage" mark was confusingly similar to the Mark.  Plaintiff avers that the infringing acts were aimed at Michigan because Defendant deliberately infringed upon the Mark with knowledge that Plaintiff's principal place of business is in Michigan.

Defendants respond that the "effects test" should not place jurisdiction in the home state of the Mark's owner unless there is proof that Defendants expressly aimed and focused their alleged infringing activity at that state.  *See* 5 McCarthy on Trademarks & Unfair Competition § 32.38.  Defendants assert that there is no evidence that Defendants targeted Michigan with intentional infringement.

15

The Court finds that the brunt of the harm was felt in Michigan.  Plaintiff claims that Defendants acted intentionally and deliberately because they were notified by the United States Patent and Trademark Office that their mark was confusingly similar to Plaintiff's mark. Defendants claim that they have been using the mark since September of 2000 and that Plaintiff's mark was not registered until 2004, (Defs.' Br. Ex. 1, Gambuzza Aff.), with first use occurring in 2001.[10]  However, even assuming that Defendants did have prior use of the Mark, they were notified by the United States Patent and Trademark Office on September 3, 2004 that their mark was confusingly similar to Plaintiff's registered Mark.  Thereafter, Defendant Spa used the Mark on its webpage and sold at least one gift certificate to a Michigan resident.  Since Defendant Spa was on notice that it was not the registered owner of the Mark, it was not free to further expand its use of the Mark.  Thus, the Court holds that the sale of a gift certificate in Michigan was an intentional and deliberate sale outside of Tennessee, with full knowledge that the Mark was owned by another entity.  Further, as stated above, Defendant Spa did not refuse to sell to Michigan residents and is presumed to have expressly aimed its acts at the State of Michigan.  As a result, the Court finds that the brunt of the harm was felt in Michigan. Moreover, Defendant Spa's use of the Mark on its website, with knowledge of Plaintiff's trademark registration.  Accordingly, the Court finds that Defendant Spa's website sufficiently establishes purposeful availment.

iii.      Non-website Activities

---

[10] Plaintiff argues through the Freedland affidavit that its first use of the Mark was July 12, 2000.  (Pl.'s Br. Ex. A, Freedland Aff. ¶ 9).  However, this statement conflicts with the first use date which appears on the Mark's U.S. trademark registration, stating a first use date of January 1, 2001.

16

In the alternative, Plaintiff argues that other activities on the part of Defendant Spa establishes minimum contacts.  Plaintiff contends that the owners of Defendant Spa have trained Michigan licensed aestheticians who reside in Michigan, with whom Defendants also have contracts.  Plaintiff avers that Defendants have spent over $240,000.00 advertising their alleged infringing mark through a regional newspaper.  Plaintiff believes that these newspapers are distributed in many states outside of Tennessee.  Plaintiffs argue that Defendant Spa's business location – which is very close to Interstate 75[11] – and its marketing make interactions between Michigan residents and Defendant Spa likely.

Defendants counter that the regional newspaper they advertise in is the *Knoxville News-Sentinel*.  According to Defendants, the *News-Sentinel* targets the Knoxville area, with some subscriptions in Kentucky, North Carolina, and Virginia.  Defendants contend that they have not "intensified" their advertising any more than any other successful local Knoxville business would. Defendants claim that they do not train aestheticians outside of Knoxville.   Defendants also argue that any visits to Defendant Spa, if they occur, could not subject Defendant Spa to lawsuits in Michigan.

The Court finds that the non-website activities of Defendant Spa does not subject it to jurisdiction in Michigan.  The use of the *News-Sentinel* for advertising does not represent purposeful availment.  The *News-Sentinel* circulation is directed at Knoxville.[12]  Further, the fact

---

[11] Interstate 75 runs through both Michigan and Tennessee.

[12] A search on the News-Sentinel (www.knoxnews.com) website reveals that subscriptions are not available to customers in the 48226 (Detroit) zipcode, or the 49091 (Sturgis, MI) zipcode.  Sturgis, Michigan is a southern Michigan city that is closer to Knoxville than Detroit.

17

that a resident of Michigan receives the newspaper does not form a strong enough nexus to subject Defendant Spa to jurisdiction in Michigan.  Additionally, even taking Plaintiff's claim as true that Defendants have trained at least one Michigan aesthetician in Knoxville, the training took place in Tennessee, not Michigan, and cannot subject Defendant Spa to this Court's jurisdiction.  Accordingly, the Court finds that Defendant Spa's non-website activities do not purposely avail them of this Court's jurisdiction.[13]

### b.    Forum Related Activities

The second element evaluated in the personal jurisdiction inquiry is whether the current controversy is related to Defendant Spa's forum-related activities.  In the instant case, Plaintiff alleges that Defendant Spa infringed on its trademark.  Plaintiff asserts that purposely selling gift certificates on its website to Michigan residents constitutes conduct related to this forum. Plaintiff also alleges that it was harmed by the infringement, since it only conducts business in this state.  Taking Plaintiff's factually supported allegations as true, the Court finds that the instant case is related to Defendant Spa's activities in Michigan.

### c.    Reasonableness

In determining whether the exercise of jurisdiction is so unreasonable as to violate notions of "fair play and substantial justice," the court should consider these factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several

---

[13] Since Defendant Salon is the registered trademark owner of "Salon Visage" (U.S. Reg. No. 2485061), its non-website activities have no connection to Defendant Spa or Plaintiff, and therefore do not purposely avail themselves to this Court's jurisdiction.

states in furthering fundamental substantive social policies.  *World-Wide Volkswagen, 444 U.S. at 292.*  Where the first two elements of the test for personal jurisdiction are met, there is an inference that the exercise of jurisdiction is reasonable.  *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

Defendant Spa argues that it is unreasonable for the Court to require it to answer the Complaint in Michigan because it never sought out a relationship with Michigan residents and, quite fortuitously, sold a minute number of gift certificates to residents of the state.  The Court holds that the exercise of jurisdiction over Defendant Spa is reasonable.  The Court found that the first two elements of the personal jurisdiction test were met; thus, there exists an inference of reasonableness.  Additionally, the Court notes that Michigan has a strong interest in protecting companies, which have their principal place of business in the state, from trademark infringement.  The Court also recognizes that Plaintiff has a strong interest in receiving convenient and effective relief, considering it is the federally registered owner of the Mark.  Conversely, any burden that may be placed upon Defendant Spa in having to defend itself in this state is significantly outweighed by Plaintiff's interest in obtaining convenient relief, and Michigan's interest in protecting its companies.

Accordingly, the Court finds that the exercise of personal jurisdiction over Defendant Spa is proper under both Michigan's Long-Arm statute and the Due Process Clause.

### 3.      *Dr. Smith as a Party to the Action*

Defendants argue that Dr. Smith is not a proper party to the action.  Dr. Smith's medical services are provided by Parkwest Plastic Surgery, PLLC, under the mark Parkwest Plastic Surgery ("Parkwest"), and not in his individual capacity.  Defendants claim that Dr. Smith only

19

used the Mark in his capacity as an employee of Parkwest to inform people that he performs some services at Defendant Spa's location.  It is Defendants' contention that because the Mark was only used to explain where the services would be provided, that is not actionable use. Defendants also argue that the Parkwest website is passive and does not subject the owner of the site to personal jurisdiction in Michigan.

Plaintiff responds that one does not use a trade name to identify a location, one uses an address.  Plaintiff argues there is an indirect business relationship between Defendants.  Plaintiff avers that under Tennessee law, Dr. Smith is liable for his infringing activities.

Defendants retort that Plaintiff has argued that Dr. Smith has jurisdictional contacts with Michigan.  Defendants further assert that Plaintiff put forth no evidentiary support to subject Dr. Smith to the same jurisdictional analysis as Defendants Spa and Defendant Salon.

Neither Plaintiff nor Defendants go through the *Zippo* "sliding scale" analysis in their briefs regarding the Parkwest website.  Regardless of the reason the Mark is used on the Parkwest website, the Court finds that the website is passive, and thus does not subject Parkwest or Dr. Smith to jurisdiction in Michigan.  Besides advertising the services Parkwest performs, the Parkwest website only provides a telephone number, a mailing address and an e-mail address for individuals to contact them.  While the website provides users with the above business information, it does not sell products or allow for reservations or appointments to be made online.  "This does not classify the website as anything more than passive advertisement which is not grounds for the exercise of personal jurisdiction."  *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (referencing *Zippo*, 952 F. Supp. at 1124).  Further, Plaintiff does not contend that Dr. Smith performs actual procedures in Michigan which would subject him to this

20

Court's jurisdiction.  Therefore, the Court finds that there is no evidence to connect Dr. Smith and Parkwest to Michigan, besides their association with Defendants Spa and Salon.  As a result, Plaintiff has not met its *prima facie* burden.  Accordingly, the Court finds that it does not have jurisdiction over Dr. Smith or Parkwest.

## III.  CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss for Lack of Jurisdiction.[14]  The Court GRANTS Defendants' Motion to Dismiss as to Defendants Salon Visage and Defendant Smith.  The Court DENIES Defendants' Motion to Dismiss as to Defendant Spa Visage.

**SO ORDERED.**


s/Paul D. Borman                         
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:   7/28/06                         
         Detroit, Michigan

---

[14] Defendants' motion is treated by this Court as a Summary Judgment Motion under FED. R. CIV. P. 56 because Defendants relied on affidavits outside the pleadings.

21